**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**
**CIVIL ACTION NO. _____**
*Electronically Filed*

**JAMES SMITH, on behalf of himself**
**and all others similarly situated**                                     **PLAINTIFF**

**v.**

**WEISER SECURITY SERVICES, INC.**                                     **DEFENDANT**

> *Serve via Certified Mail:*
> Cogency Global, Inc.
> 828 Lane Allen Road
> Suite 219
> Lexington, Kentucky 40504

---

**COLLETIVE-ACTION COMPLAINT**

---

Plaintiff James Smith, on behalf of himself and all others similarly situated, by and through counsel, submits this Collective-Action Complaint against Defendant Weiser Security Services, Inc.

**<u>Introduction</u>**

1.      Smith brings this action against Weiser, his former employer, to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act, KRS Chapter 337. Weiser's violation of both statutes has deprived Smith of wages to which he was entitled by law. Smith also brings this action, pursuant to 29 U.S.C. § 216(b), on behalf of all other similarly-situated current and former Weiser employees who, like Smith, were also deprived of wages to which they were entitled by law.

- 1 -

2.      Pursuant to a common plan and practice, Weiser did not pay Smith and members of the proposed Collective proper overtime wages. In some instances, although Smith and members of the proposed Collective were paid an hourly wage, Weiser did not pay them time-and-a-half their regular rate of pay for all hours worked in excess of 40 in a work week. Instead, Weiser paid them time-and-a-half of an improperly reduced rate of pay. For example, Smith earned $15.00 per hour. In many weeks where he worked more than 40 hours, he was paid $15.00 per hour for the first 40 hours, but only time-and-a-half on $11.00 per hour, or $16.50 per hour, for all hours over 40 in that work week. This reduced regular rate of pay and overtime pay violates state and federal law.

3.      In other instances, Smith and members of the proposed Collective were forced or otherwise required to work in excess of 40 hours in a work week while "off the clock," with Weiser's knowledge, and thus without receiving any overtime wages, also an explicit violation of state and federal law.

4.      This action is brought to recover unpaid wages that Weiser owes to Smith and to members of the proposed Collective.

### Parties, Jurisdiction, and Venue

5.      Smith is currently a citizen and resident of the State of Tennessee. At all times relevant to his former employment with Weiser, Smith was a citizen and resident of Lexington, Fayette County, Kentucky.

6.      Weiser is, and at all times relevant to this action was, a corporation organized under the laws of the State of Louisiana. Weiser conducts, and at all times relevant to this action conducted, business in the Commonwealth of Kentucky, including in Nicholasville, Jessamine

County, Kentucky. Weiser may be served with process via its registered agent for the service of process, Cogency Global Inc., at 828 Lane Allen Road, Suite 219, Lexington, Kentucky 40504.

7.      Smith's claims for unpaid wages are brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act, KRS §§ 337.285 and 337.385. Smith's collective-action claim for unpaid wages is brought under the Fair Labor Standards Act, 29 U.S.C. § 216(b). The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367.

8.      The United States District Court for the Eastern District of Kentucky, Central Division at Lexington, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(a)(2)(B).

**Facts**

9.      Weiser operates a private security business, offering security solutions to businesses, including commercial office buildings and commercial properties.

10.      At all times relevant to this action, Weiser contracted with McLane Company, Inc., to provide security at McLane's property located at 104 McLane Boulevard, Nicholasville, Kentucky.

11.      At all times relevant to this action, Weiser was an enterprise engaged in interstate commerce as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(s)(1), with annual revenue in excess of $500,000.00.

12.      Weiser established and administered the regular rates of pay and overtime pay rates, job duties, performance expectations, and work assignments and locations for all employees, including Smith and members of the proposed Collective.

13.     Weiser hired Smith in April 2019 as the Site Supervisor assigned to work at McLane, agreeing to pay him $15.00 per hour. Weiser terminated his employment on December 3, 2019.

14.     As a Site Supervisor, Smith was tasked screening and interviewing candidates for security officer positions, scheduling security officers, and, in general, overseeing the job performance of security officers assigned to work at McLane, including monitoring and turning in their time cards. Smith, however, was not granted authority to hire, fire, or discipline security officers—all such decisions remained within the discretion of Smith's supervisor. Smith also spent considerable time working as a security guard.

15.     There are two security stations at McLane: SECOM and the Guard House. The SECOM station, or security command station, is located inside McLane's office building. Weiser employees monitored security cameras located around the property and allowed McLane employees and visitors in and out of the building. The Guard House is located on the back side of the property where McLane trucks entered and exited the property.

16.     In April 2019, when Smith began working as the Site Supervisor, one Weiser employee was staffed at all times—24 hours per day, 7 days per week—at the SECOM station and at the Guard House, for a total of two employees per shift.

17.     Due to McLane's around-the-clock security requirements, Weiser had employees working three shifts per day: 6:00 a.m. to 2:00 p.m., 2:00 p.m. to 10:00 p.m., and 10:00 p.m. to 6:00 a.m.

18.     In April and May 2019, due to staffing shortages and delays in hiring occasioned by Smith's supervisor, Smith regularly worked more than 40 hours per week, as did many of the security officers—members of the proposed Collective—assigned to work at McLane. Weiser,

- 4 -

however, did not pay Smith time-and-a-half—$22.50 per hour—for all overtime hours; rather, Weiser only paid Smith $16.50 per hour for all overtime hours. Upon information and belief, Weiser likewise did not pay members of the proposed Collective time-and-a-half of their regular rate of pay for all overtime hours.

19.     In June 2019, senior management at McLane tasked Smith with additional duties that, upon information and belief, went beyond the scope of the contract between Weiser and McLane, such as creating and implementing new security policies and conducting "reefer" checks (*i.e.*, checks on the refrigeration systems inside McLane trucks and trailers that keep groceries cool during transport). Smith advised his supervisor at Weiser about this additional work and was told to comply with McLane's requests.

20.     McLane required security officers at the SECOM station and at the Guard House at all times; therefore, in order to take on the additional duties required by McLane and ratified by Weiser, Smith needed to work additional hours and needed to staff additional security officers, which in many weeks resulted in Smith and security officers working overtime. Smith estimates that, in June 2019, as a result of the additional work, he worked approximately 50-60 hours per week. Weiser, however, did not pay Smith time-and-a-half—$22.50 per hour—for all overtime hours; rather, Weiser only paid Smith $16.50 per hour for some of this overtime hours.

21.     In June 2019, as a result of the additional work, and specifically the work related to the formulation, drafting, and implementation of new security policies and procedures, Smith performed much of this work at home after he clocked out for his shift. Weiser was aware of this work, but did not compensate Smith for such time spent working "off the clock."

22.     On July 5, 2019, Smith's supervisor informed Smith that all Weiser employees assigned to work at McLane were working under "Project Urgency," an effort to reduce overtime hours and wages. Smith was told in no uncertain terms that he would be terminated if he was unable to reduce the overtime-wage exposure.

23.     Smith had made repeated attempts to hire additional security officers; however, the number of new hires needed to effectively cut overtime hours for existing employees was never authorized by Smith's supervisor, thus preventing Smith from meaningfully reducing overtime hours.

24.     As a result of Project Urgency, and in an attempt to keep his job, Smith began working off the clock, not reporting the total hours worked on his time card. From July through his termination on December 3, 2019, Smith estimates that he worked at least 70 if not up to 80 hours per week, though he only reported 40 hours per week on his time card to preserve his job and standing with the company.

25.     In this same time frame, from July through early December 2019, Smith, in an effort to keep his job, did not report the total number of hours that members of the proposed Collective worked on their time cards.

26.     Weiser was well aware of the fact that Smith and members of the proposed Collective were working off the clock. On multiple occasions between early July and early December 2019, Smith informed his supervisor that he was working more than 40 hours every week and that additional staffing was necessary. Smith complained about his total number of hours and off-the-clock work by phone and by email. Weiser, however, never took any steps to determine how many hours Smith and members of the proposed Collective were working and the amount of overtimes wages actually owed to them.

27.     On several occasions between early July and early December 2019, Smith paid cash out of his pocket to security officers who worked overtime, but for whom he could not report their total hours worked out of fear of losing his job.

28.     Around Halloween in late October 2019, Smith worked 31 straight hours. A senior management representative from McLane wanted Smith to fire a Weiser security officer, which Smith refused to do because he lacked authority to do so. As a result, McLane required that Smith not place this security officer on the schedule, to which Smith acquiesced. Because of this additional staffing shortage, and because another security officer voluntarily quit his employment, Smith worked back-to-back double shifts to cover the shifts that the security officers would have worked.

29.     Covering shifts for his subordinate employees was common between early July and early December 2019: Smith needed to reduce overtime or lose his job, so he would endeavor to keep security officers' hours at 40 and work all remaining shifts but not accurately record his time. Again, Weiser was well aware of this practice and, through its lack of action to properly pay Smith for his time spent working, approved and ratified Smith's actions.

30.     On December 3, 2019, McLane requested that Weiser remove Smith from the premises after he was involved in an altercation with a McLane truck driver. Weiser never assigned Smith to another location, effectively terminating his employment.

31.     After his termination, Smith complained to Weiser about not being paid overtime wages for all hours worked in each work week. Upon information and belief, Weiser spoke with several witnesses who corroborated Smith's statements, but Weiser has failed or refused to pay Smith for all hours worked.

- 7 -

32.     Smith has been deprived of full and proper payment of overtime wages—either because Weiser failed to pay him time-and-a-half his regular rate of pay for all overtime hours worked in April, May, and June 2019, or because Weiser failed to pay him time-and-a-half for all overtime hours worked off the clock, with its knowledge and implicit consent, in June, July, August, September, October, November, and December 2019.

33.     Members of the proposed Collective have been deprived of full and proper payment of overtime wages—either because Weiser failed to pay them time-and-a-half their regular rate of pay for all overtime hours worked or because Weiser failed to pay them time-and-a-half for all overtime hours worked off the clock, with its knowledge and implicit consent.

<b><u>Collective-Action Allegations</u></b>

34.     Smith brings this action, in part, pursuant to 29 U.S.C. § 216(b) on behalf of himself and a collective of other persons similarly situated to recover unpaid overtime wages in violation of 29 U.S.C. § 207, defined as follows:

> All current and former security officers, including site supervisors and assistant site supervisors, employed by Defendant Weiser Security Services, Inc, in Kentucky who are or were paid on an hourly basis during the applicable limitations period.

35.     Questions of law and fact common among Smith and the Collective include, but are not limited to, the following:

A.     whether Weiser maintained a uniform policy, custom, plan, or practice of failing to pay employees time-and-a-half for all hours in excess of 40 hours in a work week;

B.     whether Weiser maintained a uniform policy, custom, plan, or practice of reducing its employees' regular rate of pay for purposes of calculating their pay for all hours in excess of 40 in a work week;

C.      whether Weiser was aware that Smith and the Collective worked "off the clock;"

D.      whether Smith and the Collective were denied payment of overtime wages for all hours worked in excess of 40 in any given work week; and

E.      whether Weiser's failure to pay Smith and the Collective for all time spent working was willful within the meaning of the Fair Labor Standards Act.

36.     There are numerous current and former employees of Weiser, similarly situated to Smith, who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of a Court-approved or Court-supervised notice of this action and the opportunity to join this action pursuant to 29 U.S.C. § 216(b).

37.     Smith and members of the Collective are similarly situated, as that term is used in 29 U.S.C. § 216(b), because each of them performed similar duties, were paid similar hourly wages, and worked pursuant to Weiser's previously-described common pay practices and, as a result of such practices, were not paid the full and legally-mandated overtime wages to which they were entitled.

38.     Smith will fairly and adequately represent and protect the interests of the Collective.

39.     Smith has retained competent counsel experienced with labor-and-employment matters, with matters arising under the Fair Labor Standards Act, and with class- and collective-action litigation. Indeed, undersigned counsel has both successfully prosecuted and defended wage-and-hour collective actions and has successfully defended multiple class-action matters.

40.     The names and addresses of the members of the Collective are readily available from Weiser through records that normally are or should be maintained during the ordinary course of business.

41.     Smith reserves the right to redefine the Collective prior to notice or certification and thereafter as may be warranted or necessary, including upon evidence that such illegal pay practices extended beyond the Commonwealth of Kentucky.

**Count I:**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 207**

42.     29 U.S.C. § 207 provides that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

43.     Smith was an "employee" as defined by the FLSA, and all members of the Collective are or were "employee[s]" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

44.     Weiser was an "employer" as defined by the FLSA. 29 U.S.C. § 203(d).

45.     During his employment, Smith regularly worked more than forty hours in a week and was not paid time-and-a-half his regular rate of pay for all such work, whether on-the-clock or off-the-clock. For all off-the-clock work, Weiser was fully aware that Smith was working overtime hours.

46.     During their employment, members of the Collective, both current and former security officers, including site supervisors and assistant site supervisors, paid on an hourly basis, were not paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 in a work week, whether on-the-clock or off-the-clock. For all off-the-clock work, Weiser was fully aware that members of the proposed Collective were working overtime hours.

47.     By failing to pay Smith and the Collective appropriate overtime wages for all time spent working, Weiser has willfully, knowingly, intentionally, or recklessly violated the FLSA.

- 10 -

48.     As a result of Weiser's violations and unlawful acts, Smith and the Collective have suffered damages, including, but not limited to, unpaid overtime wages in an amount to be determined at trial. Smith and the Collective are also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

## Count II:
### Violation of the Kentucky Wages and Hours Act, KRS § 337.285

49.     KRS § 337.285 provides that "[n]o employer shall employer any of his employees for a work week longer than forty (40) hours, unless such employee receives compensation for his employment in excess of forth (40) hours in a work week at a rate of not less than one and one half (1-1/2) times the hourly wage rate at which he is employed."

50.     Smith may sue for violation of KRS § 337.285 through KRS § 337.385.

51.     Smith was an "employee" as defined by the Wages and Hours Act, and members of the Collective are or were "employee[s]" as defined by the Wages and Hours Act. KRS § 337.010(1)(e).

52.     Weiser was an "employer" as defined by the Wages and Hours Act. KRS § 337.010(1)(d).

53.     During his employment, Smith worked more than forty hours in a week and was not paid time-and-a-half his regular rate of pay for all such work, whether on-the-clock or off-the-clock. For all off-the-clock work, Weiser was fully aware that Smith was working overtime hours.

54.     During their employment, members of the Collective, both current and former security officers, including site supervisors and assistant site supervisors, paid on an hourly basis, were not paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 in a work week, whether on-the-clock or off-the-clock. For all off-the-clock work, Weiser was fully aware that members of the proposed Collective were working overtime hours.

55.     By failing to pay Smith and members of the Collective appropriate overtime wages for all time spent working, Weiser has willfully, knowingly, intentionally, or recklessly violated the Wages and Hours Act.

56.     Weiser's failure to pay Smith and the Collective proper overtime wages was not in good faith, and Weiser had no reasonable grounds for believing that its actions did not violate state law.

57.     As a result of Weiser's violations and unlawful acts, Smith and the Collective have suffered damages, including, but not limited to, unpaid overtime wages in an amount to be determined at trial. Smith and the Collective are also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiff James Smith, on behalf of himself and all others similarly situated as a collective under 29 U.S.C. § 216(b), respectfully demand as follows:

A.     for a trial by jury;

B.     for judgment against Defendant Weiser Security Services, Inc., on all claims asserted in this Complaint;

C.     for designation of this action as a collective action on behalf of the proposed Collective;

D.     for designation of Smith as the Collective's named representative;

E.     for designation of undersigned counsel as the Collective's counsel;

F.     for issuance, at the earliest possible time, of notice to the members of the Collective, apprising them of their rights to opt in to this action and assert timely claims for unpaid overtime wages;

G.      for the equitable tolling of the statute of limitations from the date of filing of this Collective-Action Complaint until the expiration of the deadline for filing consent-to-join forms pursuant to 29 U.S.C. § 216(b);

H.      for an award of compensatory damages and equitable relief, including, but not limited to, back pay and liquidated damages;

I.      for appropriate injunctive relief to ensure that Weiser's unlawful pay practices cease immediately;

J.      for reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

K.      for pre- and post-judgment interest; and

L.      any other relief to which Smith and the Collective may be entitled.

Respectfully submitted,

**/s/ Matthew T. Lockaby**
Matthew T. Lockaby
Tamara J. Patterson
Lockaby PLLC
1795 Alysheba Way, Suite 4207
Lexington, Kentucky 40509
Tele:   859.263.7884
Fax:    844.270.3044
Email: mlockaby@lockabylaw.com
            tpatterson@lockabylaw.com

*Counsel for Plaintiff, James Smith,*
*individually and on behalf of all others*
*similarly situated*